**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | |
|---|---|
| **CARL FOX, III** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:11-CV-377-CWR-MTP** |
| **STATE OF MISSISSIPPI; PEARL RIVER VALLEY WATER SUPPLY DISTRICT; DAVID SESSUMS; FRED COATS; PERRY WAGGENER; JOHN SIGMAN; BENNY FRENCH** | **DEFENDANTS** |

**ORDER**

Pending before the Court are six motions to dismiss, five motions for a more definite statement, and a motion to amend. Docket Nos. 16, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40. Responses and rebuttals have been filed, Docket Nos. 41-46, and the matter is ready for review.

*I.   Factual and Procedural History*

The facts are drawn from the complaint and taken as true for the purpose of resolving these motions.

On July 5, 2008, Carl Fox III was assaulted and battered by Lieutenant David Sessums of the Ross Barnett Reservoir Patrol,[1] and then incarcerated without probable cause "as a vulnerable adult." Docket No. 1, at 5. Fox was charged with disobeying law enforcement, resisting arrest, and breach of the peace. *Id.* A court date was scheduled for June 10, 2009, in Madison County state court. *Id.*

On June 9, 2009, the day before his court date, Fox was arrested and incarcerated by Reservoir Patrol officer Fred Coats, and charged with disturbing the peace. *Id.* at 5 and 21. Fox suggests that the second arrest and incarceration were made to dissuade him from fighting the charges from the first arrest, or in retaliation for that activity. *Id.* at 5 and 18-21.

In June 2010, in the County Court of Madison County, the 2008 charges were dropped. *Id.* at 21. In March 2011, in the Justice Court of Madison County, the 2009 charge was dropped. *Id.*

In June 2011, Fox filed a complaint in this Court against the State of Mississippi, the Pearl

---

[1] The Reservoir Patrol is the law enforcement agency of the Pearl River Valley Water Supply District.

River Valley Water Supply District ("the District"), David Sessums, Fred Coats, Perry Waggener,[2] Benny French, and John Sigman. *Id.* at 1-2. He claimed that the Reservoir Patrol officers' actions caused him to suffer "physical, emotional, and monetary devastation" and "trauma," and attached pictures showing his physical injuries. *Id.* at 5 and 15. Fox's specific legal claims included assault and battery, excessive force, civil rights violations pursuant to 42 U.S.C. § 1983, and violations of the Americans with Disabilities Act ("ADA"). *Id.* at 6. He requested monetary damages in the amount of $127,000. *Id.* at 23.

Fox's complaint also included three "initial motions." He asked for a continuance past April 1, 2012, for an Assistant United States Attorney to represent him against the defendants, and for the United States Department of Justice to intervene in this case to support him. *Id.* at 23-24.

II. *Present Arguments*

The Court will summarize each of the pending motions, Fox's response, and the defendants' rebuttals.

A. *The State*

The State of Mississippi first invokes its Eleventh Amendment immunity from being sued in federal court for state law and § 1983 claims. Docket No. 17, at 2-3. It then contends that § 1983 claims cannot be maintained against a State. *Id.* at 2-4. Finally, it says Fox has failed to sufficiently state a claim for a violation of the ADA. *Id.* at 4.

B. *The District*

The District also claims to be an entity of the State of Mississippi, and therefore joins the State's immunity arguments. Docket No. 21, at 2-6. It also joins the State's ADA argument. *Id.* at 6-7. Separately, the District argues that it was not properly served because no summons was issued for the District, and that no complaint or summons was delivered to its chief executive or other authorized recipient of service. *Id.* at 7-9. In the alternative, it moves for Fox to provide a more definite statement of his claims. *Id.* at 9-12.[3]

C. *Sessums*

---

[2] Although this defendant is listed on the docket sheet as "Wagner," his motion to dismiss suggests that his name is spelled "Waggener." Docket No. 24.

[3] Counsel for the District and the individual defendants has separately refiled all of her motions to dismiss as motions for a more definite statement. *Compare* Docket Nos. 20-29 *with* Docket Nos. 30-39.

Reservoir Patrol Lieutenant David Sessums argues that he is entitled to Eleventh Amendment immunity as to the state law and § 1983 claims against him in his official capacity. Docket No. 23, at 2. As to the individual capacity claims, Sessums pleads qualified immunity and urges that Fox's allegations are insufficient. *Id.* at 2-4. Sessums presents the same ADA argument as above and, in the alternative, moves for a more definite statement of Fox's allegations. *Id.* at 4-6.

  D.  *Waggener & Coats*

Reservoir Patrol Chief Perry Waggener and Officer Fred Coats first assert all of Sessums' legal arguments as their own, adding that Fox's allegations against them are less specific. Docket No. 25, at 2-5. They contend they were not properly served because their copies of the complaint and their individual summons were delivered to Sessums. *Id.* at 5-7.

  E.  *Sigman*

John Sigman, Executive Director of the District, presents arguments identical to Waggener and Coats' motion. Docket No. 27, at 2-8. His copy of the summons and complaint was allegedly delivered to the District's receptionist, which he argues is insufficient. *Id.* at 5-7.

  F.  *French*

Benny French, the former Executive Director of the District, lodges almost identical legal and factual arguments for dismissal as Sigman's motion. Docket No. 29, at 2-8. The substantive difference is that French alleges he is being sued only for not turning over certain District records to Fox. *Id.* at 3.

  G.  *Fox's Response*

Fox's response brief and simultaneous motion to amend state that he was beaten up by Sessums and incarcerated twice, by Sessums and then Coats, both times without probable cause. Docket No. 40, at 3. The District, Waggener, Sigman, and French are "accomplices." *Id.* at 4. Fox agrees that the District is an agency of the State of Mississippi. *Id.* His response otherwise details how Sessums and Coats' acts were a violation of Fox's rights and civil liberties. *Id.* at 3-12.

Fox's more specific response to the State's motion to dismiss argues that the State could not move to dismiss until after discovery, and that its motion impinges upon his rights. Docket No. 42, at 1-2.

  H.  *Rebuttal and Other Briefs*

The State's rebuttal brief disagrees that its motion was premature, emphasizing that its

motion to dismiss was based on law and not dependent upon any facts, much less any that may come to light in discovery. Docket No. 43, at 1-2.

The District and its employees have also filed a rebuttal, in which they reurge their prior arguments and claim Fox's response to be non-responsive and unsubstantiated. Docket No. 44.

Finally, the State opposes Fox's motion to amend, saying that the motion fails to address the substantive issues in the case. Docket No. 45. The District defendants join in the State's response. Docket No. 46. Fox has not filed a rebuttal brief in support of his motion.

III. *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of actions that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's "emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

IV. *Discussion*

A. *The ADA Claim Will Be Dismissed*

The legal standard for claims brought under the Americans with Disabilities Act is as follows:

> A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being

>denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (citation omitted); *see* 42 U.S.C. § 12132.

Concerning the first element, in the ADA, Congress defined the term "qualified individual with a disability" as:

>an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). For present purposes, the Court will assume that Fox satisfies this definition because of the physical ailments he described in his complaint. Docket No. 1, at 6 and 18.

The second requirement will also be presumed to be established for purposes of a motion to dismiss. Fox's complaint implies that he has been excluded from or denied full enjoyment of the Reservoir by the Reservoir Patrol officers' battery, arrests, and retaliation. *Id.* at 18-21.

The third element, however, has not been met. Fox has not alleged that any defendant's denials of services, exclusions from benefits, or acts of discrimination were done due to his disability. Because he has not plead the elements of an ADA claim, it will be dismissed as to all defendants.

    B.  *The State Is Immune from Suits for Monetary Relief in Federal Court*

"The Eleventh Amendment bars suits by private citizens against a state in federal court. The bar applies not only to the state itself, but also protects state actors in their official capacities." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted). "It is clear, of course, that in the absence of consent a [federal court] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quotation marks and citation omitted); *see Bryant v. Military Dep't of Miss.*, 381 F. Supp. 2d 586, 591 (S.D. Miss. 2005). "[A] suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 (1984).

In addition, States are not liable under 42 U.S.C. § 1983 because they are not considered "persons" under that statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see Bryant*, 381 F. Supp. 2d at 592. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66.

Here, because the State of Mississippi has not consented to be sued in federal court for these claims, and because it has no liability under § 1983, Fox's claims against it must be dismissed.

For the same reasons, Fox's state law and § 1983 claims against individual Reservoir Patrol officers in their official capacities will be dismissed. *See LeBlanc*, 627 F.3d at 124.

### C. The District Will Be Dismissed

Fox agrees that the District is an agency of the State of Mississippi. Docket Nos. 1, at 1; 40, at 4.[4] The District is therefore entitled to dismissal on identical grounds as the State itself. The Court need not consider the District's process and service arguments.

### D. Whether Four of the Individual Defendants Were Properly Served

Remaining in this case are Fox's § 1983 claims against five District employees (Sessums, Waggener, Coats, Sigman, and French) in their individual capacities. A § 1985 claim for conspiracy to interfere with civil rights can also reasonably be inferred by Fox's use of the words "Collusion" and "Violation of Constitutional Civil Rights" in the complaint's list of specific charges. Docket No. 1, at 6. That claim will also be considered as to the five individual District employees.

That said, four of these defendants have asserted that they were not properly served within the 120-day period allotted by the federal rules. Fox's response brief has not disputed that charge, Docket No. 40, but the Court will conduct its own review of the record and the law.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum." *Id.* Accordingly, Rule 12 permits a court to dismiss an

---

[4] The District has cited a statute and several cases to show that it is a state agency. Docket No. 21, at 2. To those, the Court would add an Opinion of the Attorney General of Mississippi dated March 11, 1992, and available at 1992 WL 614621.

6

action for "insufficient service of process." Fed. R. Civ. P. 12(b)(5).

The procedure for service is set out in Federal Rule of Civil Procedure 4, and reproduced in relevant part here:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by . . . doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2)(A)-(C).[5]

"When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (citations omitted). "Plaintiffs normally meet the burden of establishing that the defendant was properly served by producing the process server's return of service, which is generally accepted as prima facie evidence of the manner in which service was effected." *Nabulsi v. Nahyan*, No. H-06-2683, 2009 WL 1658017, *4 (S.D. Tex. June 12, 2009) (quotation marks and citations omitted).

1. Waggener and Coats

The record shows that Waggener and Coats' copies of the summons and complaint were served upon Sessums. Docket Nos. 14-15. The process server reasoned (in writing, on the completed Proofs of Service) that Sessums could accept process for those defendants because he was the shift commander or supervisory officer over Waggener and Coats. *Id.* That reasoning was incorrect.

Rule 4, reproduced in part above, shows at least three ways of effecting service. Part (A) does not apply here because Waggener and Coats were not personally served. Nor will Part (B) suffice – service was not made at a dwelling or place of abode, nor was it presented to a resident.

---

[5] Rule 4(e)(1) also provides that a plaintiff may serve process in accordance with state law. As counsel for the defendants acknowledges, though, Mississippi's Rule 4 "is nearly identical to its federal counterpart." Docket No. 27, at 6; *see* Miss. R. Civ. P. 4(d)(1). The facts of this case do not warrant a separate state law analysis.

7

The only part of the Rule arguable here is part (C). But there is no evidence that Sessums was an agent authorized by Waggener or Coats, or else by law, to accept service. *See Davis-Wilson v. Hilton Hotels Corp.*, 106 F.R.D. 505, 508 (E.D. La. 1985) ("An agent must be expressly appointed for the purpose of receiving service."). In his response brief, Fox has not put forth any law showing that supervisors are generally allowed to accept service for their subordinate employees. Absent some agreement, they are not so authorized.

It is undisputed that Fox's original time to serve the defendants has expired. *See* Docket No. 11. Rule 4, however, states that "if the plaintiff shows good cause for the failure [to timely serve a defendant], the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). According to a leading treatise, "good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, . . . the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se." Wright & Miller, 4B Fed. Practice & Procedure § 1137 (3d ed. updated Apr. 2012). "Moreover, even if good cause is lacking, the court has discretionary power to extend time for service." *Havard v. F.M. Logistics, Inc.*, 252 F.R.D. 317, 318 (S.D. Miss. 2008) (citation omitted).

Here, because the error was the process server's and the plaintiff is proceeding *pro se*, there is good cause for a brief extension of time.[6] Fox shall have 33 days from the date of this Order to properly serve these two defendants.[7] *See also Int'l Fire & Safety, Inc. v. HC Services, Inc.*, No. 2:06-cv-63, 2006 WL 2403496, *1 (S.D. Miss. Aug. 18, 2006) ("The court may use its discretion not to dismiss the action in those cases in which it is not clear whether proper service has been made; the simplest solution in this situation is to quash process and allow plaintiff another opportunity to serve defendant.") (quoting Wright & Miller § 1354) (quotation marks and brackets omitted).

2. Sigman and French

The record evidence is different as to Sigman and French. The Proofs of Service filed with

---

[6] In addition, the Court surmises that the defendants have actual notice of the suit, in part because all are represented by the same counsel. *See Sys. Signs Supplies*, 903 F.2d at 1014.

[7] The extra three days are provided because the plaintiff will receive this Court's Order via U.S. mail.

8

the Court show that Sigman and French were personally served with the summons and complaint at their place of employment.[8] Docket Nos. 18-19. The Proofs of Service were sworn by the process server under penalty of perjury, *id.*, and thus are competent evidence that service was perfected. Sigman and French have provided only mere assertions, through their lawyer, that service was inadequate. That is insufficient. Their motion to dismiss on this basis will be denied.

   *E.    Qualified Immunity*

Remaining in this case are Fox's § 1983 and § 1985 claims against Sessums, Sigman, and French.[9] All three have pled the affirmative defense of qualified immunity. Docket Nos. 23, at 3; 27, at 3; 29, at 3.

"Qualified immunity shields government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (quotation marks and citation omitted). "More precisely, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quotation marks, citation, and brackets omitted).

A qualified immunity analysis requires the Court to decide two issues: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (citations omitted).

The immunity process also imposes an additional pleading requirement on the plaintiff. "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). The plaintiff's reply brief is called a 'Rule 7 reply.' *Id.* The more specific the defendant's invocation

---

[8] The date on the Proofs of Service is likely incorrect, because December 4, 2012, has not yet arrived. Sigman and French argue that the true date is January 4, 2012. Docket Nos. 27, at 5; 29, at 5. The precise date of service is inconsequential at the present.

[9] Waggener and Coats will be in an identical position if they are properly served within 33 days.

9

of qualified immunity is, the more specific the plaintiff's Rule 7 reply must be. *Id.*

Here, Sessums, Sigman, and French have all invoked qualified immunity and requested a Rule 7 reply. Docket Nos. 23, at 3; 27, at 3; 29, at 3. The Court finds that greater detail would assist the Court and the parties. Fox is directed to file a brief stating, with as much specificity as he can provide, what each of these three individuals did to him, and why those facts show a constitutional violation (§ 1983) and a conspiracy to violate the constitution (§ 1985). His Rule 7 reply should also explain why the officers lacked probable cause to arrest him each time.

The outlines of Fox's claim against Sessums are certainly present in the complaint: in July 2008, Sessums allegedly battered and arrested Fox without probable cause, and then 11 months later allegedly colluded with another officer to have Fox arrested the night before his court date, again without probable cause. Docket No. 1, at 5 and 18-21. For his part, Sessums' pleading of qualified immunity is rather general and does not shed any light on the issue. Docket No. 23, at 3. But Fox still should attempt to set forth additional facts about what happened before and during those arrests, how Sessums was involved each time, and how that violated his constitutional rights.

Fox will have to provide much more specificity as to how Sigman and French were involved in his deprivation of rights. Sigman is the Executive Director of the District, not a law enforcement officer. Docket No. 27, at 1. The complaint does not allege what he did to violate Fox's rights. French is potentially more removed from the situation, since he is the former Executive Director of the District. Docket No. 29, at 1. The only claim suggested in the complaint against French is for violating the Mississippi Public Access to Public Records Act. Docket No. 1, at 22. That Act is a state law, though, and a claim for violating it does not concern a deprivation of federal or constitutional rights. Specifically, suits brought under that law are to be filed in the Chancery Court of Mississippi. *See* Miss. Code § 25-61-13(1)(a).

Fox's Rule 7 reply as to these three defendants shall be filed with the Clerk of Court within 33 days. If Waggener and/or Coats are properly served, Fox should proceed to file a Rule 7 reply as to their actions, within 14 days of their date of service.

After receiving the Rule 7 replies, the defendants will have 21 days to renew their motions to dismiss, if any, on the basis of qualified immunity. *E.g.*, *Rivera v. Kalafut*, 456 F. App'x 325, 328 (5th Cir. 2011) (unpublished).

V.     *Other Considerations*

10

### A. Fox's Initial Motions

The Court will now return to Fox's three "initial motions." Docket No. 1, at 23-24. The request for a continuance beyond April 1 is now moot. Fox's request for an injunction forcing the United States government to prosecute this case will be denied because he has no right to have the government represent him. And his request to force DOJ to intervene in support of his case will be denied for the same reason.

### B. Fox's Motion to Amend

The motion to amend is not well-taken and will be denied, in part because Fox has not explained what he would do with an opportunity to amend his complaint. The case will proceed with the original complaint against the three (and perhaps four or five) individual defendants, on the causes of action identified in this Order.

### C. The Case Will Be Stayed In Part

Pursuant to Local Rule 16(b)(3)(B), all attorney conferences, disclosures, and discovery are stayed pending resolution of the qualified immunity defense. The stay does not apply to Fox's Rule 7 replies or his service of Waggener and Coats, should he desire to serve them.

## VI. Conclusion

For the above reasons, it is hereby Ordered that:

– The State's motion to dismiss, Docket No. 16, is granted.

– The District's motion to dismiss, Docket No. 20, is granted.

– David Sessums' motion to dismiss, Docket No. 22, is granted in part and denied in part.

– Fred Coats and Perry Waggener's motion to dismiss, Docket No. 24, is granted in part and denied in part.

– John Sigman's motion to dismiss, Docket No. 26, is granted in part and denied in part.

– Benny French's motion to dismiss, Docket No. 28, is granted in part and denied in part.

– The defendants' motions for a more definite statement, Docket Nos. 30, 32, 34, 36, 38, are denied.

– Fox's motion to amend, Docket No. 40, is denied.

– This case is stayed pending resolution of the defendants' qualified immunity defense.

– Within 33 days, Fox shall file his Rule 7 replies as to Sessums, Sigman, and French.

– Fox may serve Waggener and Coats within 33 days, if he so chooses.

– If Waggener and/or Coats are properly served, Fox shall file a Rule 7 reply as to them, which will be due within 14 days of their date of service.

– After receiving Fox's Rule 7 replies, the defendants will have 21 days to renew their motions to dismiss, if any, on the basis of qualified immunity.

**SO ORDERED**, this the second day of August, 2012.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
